# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00263-CR
## NO. 03-02-00264-CR

**Brandy Collins, Appellant**

**&**

**Curley Guidry, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NOS. 3011849 &3011850, HONORABLE MICHAEL F. LYNCH, JUDGE PRESIDING**

Appellants Brandy Collins and Curley Guidry pleaded guilty to the charge that they intentionally and knowingly possessed marihuana in an amount of more than four ounces but less than five pounds. *See* Tex. Health & Safety Code Ann. ' 481.121(b)(3) (West Supp. 2001). The district court deferred adjudication of guilt in Collins=s case, placing her on five years deferred adjudication community supervision and fining her $750. The court found Guidry guilty and sentenced him to two years in state jail, probated for five years, and a $750 fine. The sole issue before this Court is whether the district court erred in denying the appellants= motions to suppress evidence obtained after police officers failed to announce

their presence and purpose before forcing entry into Guidry=s residence.[1] We will affirm the district court=s ruling and judgments.

**BACKGROUND**

Detective Edward Peek submitted an affidavit in support of the warrant to search Guidry=s residence in Austin. It was based on information from a reliable confidential informant who stated that Guidry was growing and selling marihuana from his residence where he lived with Collins. The informant had been inside Guidry=s residence and had observed a distributable amount of marihuana within seventy-two hours of the issuance of the search warrant. In the affidavit, Peek stated that the informant had observed numerous marihuana plants in the bedroom, a machine gun in the living room, and a pistol in one of the bedrooms. Peek also noted that Guidry had previously been arrested for possession of marihuana with the intent to distribute and charged for driving under suspension of his license and a probation violation. Peek stated that, based on his experience and training in narcotics investigations, it was reasonable to believe that individuals who sell drugs often arm themselves for protection and to avoid apprehension from police officers. Finally, the affidavit stated that Aentry into the residence [would] be made utilizing tactics that . . . preclude destruction of evidence . . . and . . . [protect] . . . the people involved.@

---

[1] Collins and Guidry each filed a separate motion to suppress, but they were consolidated into one pretrial proceeding because they were charged based on the same transaction or set of circumstances. After requesting briefs from the parties and holding an *in camera* hearing, the district court overruled the motions in a single ruling.

On March 27, 2001, nine members of the Austin Police Department=s narcotics unit executed the warrant to search Guidry=s residence. The officers arrived in a van and set up surveillance outside the residence. The officers did not observe anyone arrive at or leave the residence during the surveillance period. To execute the warrant, the officers emerged from the van, ran across the front yard, and reached the front door in approximately ten seconds. The officers then used a ram to break down the front door; they did not knock and announce their presence or purpose. Once inside, the officers found the residence empty of people.

The search uncovered fifty-two growing marihuana plants and equipment for growing marihuana. However, the officers did not find a machine gun or pistol or any other evidence of firearms. Furthermore, the officers did not find any scales, packaging material, or other items that would indicate drug distribution. Guidry and Collins moved to suppress the evidence seized from Guidry=s residence, alleging that it was the result of an unreasonable search and seizure because the officers did not first knock and announce their presence before entering the premises. At the suppression hearing, Guidry testified that neither he nor Collins had at any time possessed any firearm at the residence. The district court deemed the no-knock entry to be reasonable based on the totality of the information provided by the reliable informant, including the presence of weapons.

**STANDARD OF REVIEW**

An appellate court reviews a trial court=s ruling on a motion to suppress under an abuse of discretion standard. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). The ruling will be overruled only if it falls outside the bounds of reasonable disagreement. *Janecka v. State*, 937 S.W.2d

456, 462 (Tex. Crim. App. 1996).  Thus, the court=s ruling will not be reversed, even if made for the wrong reason, if the ruling is supported by the record and correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  Appellate courts give great deference to a trial court=s determination of historical fact.  *Johnson v. State*, 68 S.W.3d 644, 652 (Tex. Crim. App. 2002).  However, we review *de novo* mixed questions of law and fact that do not turn on the credibility and demeanor of a witness.  *Id.*

## DISCUSSION

The Fourth Amendment requires that A[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . .@ U.S. Const. amend. IV.  The Fourth Amendment incorporates the common law Aknock and announce@ rule, which requires that police officers knock and announce their presence before forcing entry into a dwelling. *See Wilson v. Arkansas*, 514 U.S. 927, 931-34 (1995).  The purpose of the Aknock and announce@ rule is to: (1) protect officers and residents from potential violence; (2) prevent the unnecessary destruction of private property; and (3) protect residents from unnecessary intrusion into their private lives.  *See United States v. Cantu*, 230 F.3d 148, 151 (5th Cir. 2000).

Although a search of a dwelling may be constitutionally defective if police officers enter without prior announcement, certain law enforcement interests may make an unannounced entry reasonable. *See Wilson*, 514 U.S. at 936.  It is the duty of trial courts to determine when an unannounced entry is reasonable.  *Id.*  To justify a no-knock entry:

**4**

> [T]he police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standardCas opposed to a probable-cause requirementCstrikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.

*Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). In reviewing the reasonableness of a no-knock search, the relevant inquiry focuses on the circumstances existing at the time of entry. *Id*.; *see also United States v. Grogins*, 163 F.3d 795, 799 (4th Cir. 1998).

Even though some no-knock entries may be lawful, the Supreme Court rejected a blanket exception to the Aknock and announce@rule for all felony drug investigations based on over-generalizations about today=s drug culture or other general categories of criminal behavior. *See Richards,* 520 U.S. at 392. The police must have a reasonable belief, based on particular circumstances, that announcing their presence might be dangerous. *See United States v. Ramirez*, 523 U.S. 65, 71 (1998) (holding no-knock entry reasonable because reliable informant told police that suspect had weapons at his residence and that suspect, an escaped convict with a violent past, had vowed never to Ado time@); *see also United States v. Mattison*, 153 F.3d 406, 411 (7th Cir. 1998) (holding no-knock entry reasonable where officer=s reliable informant claimed defendant possessed weapon and had threatened to kill anyone who interfered with drug sales).

Appellants argue that the mere presence of drugs and weapons in a residence is insufficient to justify an unannounced entry. *See, e.g.*, *People v. Wright*, 697 N.E.2d 693, 698 (Ill. 1998). According to appellants, although Texas courts have not addressed the appropriateness of a no-knock entry in these particular circumstances, the presence of a weapon creates an exigent circumstance and excuses a no-

**5**

knock entry only when the government can demonstrate that the suspect was armed and likely to become violent or use the weapon.[2] *See United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996) (concluding that Athreats to an officer=s safety, a criminal record reflecting violent tendencies, or a verified reputation of a suspect=s violent nature can be enough to provide law enforcement officers with justification to forego the necessity of knocking and announcing their presence@); *see also Gould v. Davis*, 165 F.3d 265, 272 (4th Cir. 1998) (holding that Aguns do not fire themselves . . . a justifiable fear for an officer=s safety must include a belief, not simply that a gun may be located within a home but that someone inside the home might be willing to use it@); *Grogins,* 163 F.3d at 798-99 (holding no-knock entry justified where residence was known to be drug stash house frequented by drug dealer who had history of gun related violence, including shoot-outs). Appellants contend that the officers lacked information demonstrating that those inside the house had a violent criminal past or that they were likely to use weapons against the police. Furthermore, at the suppression hearing, Guidry testified that he had never possessed a machine gun or a pistol at his residence at any time.

---

[2] *Stokes v. State*, 978 S.W.2d 674 (Tex. App.CEastland 1998, pet. ref=d), is the closest case we find on point. Stokes argued that the police officers= entrance violated the knock-and-announce requirement. *Id.* at 675. The court held the entry to be reasonable because a reliable informant had informed police officers that guns and marihuana were in the residence. *Id.* at 677. *Stokes* is distinguishable from appellants= situation because Stokes was home at the time of the search, and the officers did announce their presence two seconds before forcing the door open. *Id.* at 675.

The State responds that trial courts have the discretion to determine the reasonableness of an unannounced entry. *See Wilson*, 514 U.S. at 936. Based on facts known to an officer at the time of a search, a mere suspicion of danger, if reasonable, can excuse compliance with the Aknock and announce@ doctrine. *See Grogins*, 163 F.3d at 799. Additionally, the Fifth Circuit has recently suggested that exigent circumstances include an officer=s reasonable belief that weapons will be located in the defendant=s residence. *See United States v. Valdez*, 302 F.3d 320, 322 (5th Cir. 2002). Here, the police officers did have a reasonable suspicion that knocking and announcing could endanger their safety because the informant provided them information that appellants had possessed a machine gun and pistol in the residence within seventy-hours of the search. *See United States v. Brown*, 276 F.3d 14, 14 (1st Cir. 2002) (letting stand for the first time a district court=s ruling that presence of drugs combined with gun amounts to *per se* Areasonable suspicion@).

We recognize that the mere assumption that those in possession of controlled substances are normally also in possession of firearms is insufficient as a matter of law to eliminate the notice requirement. *See Richards*, 520 U.S. at 394-95; *see also Price v. State*, No. 14-01-01028-CR, 2002 Tex. App. LEXIS 6679, at *12 (Tex. App.CHouston [14th Dist.] Sept. 12, 2002, no pet. h.) (sustaining appellant=s suppression issue where there was Ano threat of violence, no history of violence, no reliable or even unreliable indication arms were actually in appellant=s home, and no indication appellant knew he was under suspicion.@). However, in the instant case the State does not rely *exclusively* upon Peek=s statement about his experience in narcotics investigations. The State also relies on the fact that its informant,

reasonably believed to be reliable or credible,[3] said he saw within seventy-two hours a *machine gun* in Guidry=s living room.  A machine gun is not the type of firearm ordinarily possessed by law abiding citizens for sport or protection; consequently, Peek=s statements made on the basis of his experience and training in narcotics investigations, coupled with the information provided by a reliable informant, provide the particular exigent circumstances necessary to make reasonable the officer=s suspicion of danger.  Thus, we hold that under these facts, the district court did not abuse its discretion in denying the motion to suppress, because the court=s ruling was not outside the bounds of reasonable disagreement.

In any event, appellants here did not suffer egregious harm.  For example, in *United States v. Barnes*, 195 F.3d 1027, 1028-29 (8th Cir. 1999), the court held that where nobody was in the residence at the time, knocking would have made no difference.  The police would have had to enter the premises forcibly in any event because a knock would not have been answered.  *Id.*  Similarly, because appellants were not at home at the time of the search, we cannot say that appellants= Fourth Amendment rights would have been better served had the officers first knocked and announced before forcibly entering the residence with their warrant to search the premises.

---

[3]     Pursuant to rule 508(c)(3), Peek disclosed the identity of the informant during an *in camera* proceeding and discussed, among other things, whether there was any reason for the informant to give false information concerning the weapons observed at Guidry=s residence.  *See* Tex. R. Evid. 508(c)(3).  At a subsequent pretrial hearing in open court, the district court stated:

> After hearing all the testimony and looking at it very carefully, the court determined that the information to the court=s satisfaction, based on this hearing, was credible, and so I=m going to further deny the motion to suppress as to the second prong presented by the defense based on that in-camera hearing.  And I believe it was pretty detailed; went over everything I could think of that might be relevant to the issues presented by the defense.

## CONCLUSION

We overrule the appellants=sole issue.  Accordingly, the judgments of the district court are affirmed.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Patterson and Puryear

Affirmed

Filed:   December 5, 2002

Do Not Publish

9